UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1.      I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States. I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters. Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2.      Investigation reveals that, on or about Sunday, August 3, 2025, **Gustavo ADAMES-ROSA** was found in the United States illegally, upon being encountered, at or near Barrio Obrero, in San Juan, Puerto Rico, while present in the United States illegally, after having been deported subsequent to a felony conviction. Therefore, this Affidavit is made in support of a Criminal Complaint against **Gustavo ADAMES-ROSA** based on violation of **Title 8, _United States Code_, Section 1326(a) & (b)(1)**, Re-entering the United States after being previously removed, subsequent to a felony conviction.

3.      I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

1

## **PROBABLE CAUSE**

4. On or about Sunday, August 3, 2025, Border Patrol Agents (BPAs) were conducting roving patrol operations at or near Barrio Obrero, San Juan, Puerto Rico. This area is known for frequent drug & migrants smuggling activity.

6. While on patrol in the morning hours, BPAs observed several individuals, including **ADAMES-ROSA** who was walking on the sidewalk in Barrio Obrero. BPAs identified themselves as immigration officers and approached **ADAMES-ROSA** to inquire about his citizenship and nationality. **ADAMES-ROSA**, freely and voluntarily admitted to being a national of the Dominican Republic and being unlawfully present in the United States.

9. Records checks were conducted and BPAs discovered **Gustavo ADAMES-ROSA** was an illegal alien with a prior deportation/removal order and a felony conviction in the District of Puerto Rico under 8 U.S.C. § 1326(a) for which he served 83 days of imprisonment in San Juan, Puerto Rico. **ADAMES-ROSA** was arrested and transported to the U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing and removal proceedings.

10. Once at the Ramey Station, **ADAMES-ROSA**'s photograph & fingerprints were taken and entered into different law enforcement database systems. Record checks confirmed that **ADAMES-ROSA** possess prior immigration & criminal history. More specifically, record checks revealed the following:

   (a) **ADAMES-ROSA** is a native and citizen of the Dominican Republic by virtue of his birth in Cotuí, Dominican Republic.

   (b) On February 15, 2005, **ADAMES-ROSA** illegally entered the United States at or near Aguadilla, Puerto Rico.

2

(c)     On December 16, 2005, **ADAMES-ROSA** was encountered by Customs & Border Protection (CBP) Special Operations Roving Team at Gate 5 at the Luis Muñoz Marín International Airport while trying to board American Airlines, flight 1692 destined to Philadelphia, PA.

(d)     **ADAMES-ROSA** was offered and granted a Voluntary Departure to his home country, the Dominican Republic.

(e)     On December 19, 2005, ADAMES-**ROSA** voluntarily departed the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.

(f)     On February 1, 2006, **ADAMES-ROSA** illegally entered the United States, again, at or near San Juan, Puerto Rico.

(g)     On February 11, 2008, **ADAMES-ROSA** was encountered again by CBP Pre-Flight Team at the Luis Muñoz Marín International Airport in San Juan, Puerto Rico, attempting to board a US Airways flight number 1996 to the City of Philadelphia, PA.

(h)     During his encounter, he was interviewed and questioned as to his citizenship. **ADAMES-ROSA** indicated to CBP Officers, at the time, that he was a "Boricua" born in Mayaguez, Puerto Rico. When asked to provide an identification, he then presented a fraudulent Puerto Rico Driver's License with the following fraudulent information: Name: Walter F. Valentin Rivera; Date of Birth: July 23, 1965; Puerto Rico's Driver's License Number 4239936; Address: Bo. Capetillo, Rio Piedras / Calle 12 Apt. 301, San Juan, Puerto Rico 00915.

(i) When asked again about his identity, **ADAMES-ROSA** provided false information to CBP Officers indicating that he was a United States citizen.

(j) Record Checks were conducted on the provided the driver's license number provided by **ADAMES-ROSA**, which came back as an expired apprentice category/type driver's license under a person with the name provided by **ADAMES-ROSA**, but with a different address, height, and weight.

(k) On February 19, 2008, an Immigration Judge Order of Removal was issued against **ADAMES-ROSA**.

(l) On February 29, 2008, **ADAMES-ROSA** was officially and physically deported/removed from the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.

(m) On November 8, 2016, **ADAMES-ROSA** was encountered for a third time, at the Luis Muñoz Marín International Airport. **ADAMES-ROSA** was encountered by the Transportation Security Administration (TSA) and was referred to CBP at the Central Security Checkpoint, while attempting to board American Airlines flight 772, destined to Philadelphia, PA. At the time **ADAMES-ROSA** presented an unexpired Dominican Republic passport number (PR0442406); Issue Date: October 19, 2015; Expiration Date: October 19, 2021. When questioned, **ADAMES-ROSA**, admitted having entered the United States by sea without inspection.

(n) **ADAMES-ROSA** was processed for an Expedited Removal Order and prosecuted in criminal case no. 16-724 (ADC), for violations under Title 8 U.S.C. 1326(a) – Reentry of a Removed Alien.

(o) On January 31, 2017, **ADAMES-ROSA** was convicted at the San Juan District Court of Puerto Rico and sentenced to "time served" which was two months and 23 days of imprisonment, a term of supervised release term of one year with certain mandatory and standard conditions of supervision to include not committing another federal, state or local crime.

(p) On April 4, 2017, **ADAMES-ROSA** was officially & physically removed from the United States to the Dominican Republic from the Port of Miami, Florida. This was his second removal/deportation, in addition to his first voluntary departure.

11. When encountered in Barrio Obrero by BPAs once again on Sunday, August 3, 2025, **ADAMES-ROSA** claimed having reentered the United States again through Aguadilla, Puerto Rico via yola on February 10, 2023. Since then, he's been living and residing illegally in Puerto Rico.

12. BPAs determined **ADAMES-ROSA** re-entered the United States at a place other than a designated Port of Entry.

13. Record checks also revealed that as of August 5, 2025, **ADAMES-ROSA** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into

5

the United States. Furthermore, **ADAMES-ROSA** was not inspected, admitted, or paroled into the United States by an immigration officer, nor did he present himself at a designated port of entry for inspection. **ADAMES-ROSA** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

14. Border Patrol Agents advised **ADAMES-ROSA** of his right to legal representation and his right to speak with the Consular Officer of his native country, the Dominican Republic.

15. Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate that **ADAMES-ROSA** illegally reentered the United States after being removed and subsequent to a felony conviction, in violation of 8 U.S.C. §§ 1326 (a) & (b)(1).

_____
Luis Polo
Border Patrol Agent

Sworn before me pursuant to FRCP 4.1 at __4:23 PM__ by telephone, this __5th__ day of August 2025.

_____
HONORABLE MARCOS E. LÓPEZ
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO